JUSTICE GRAY,
dissenting.
I respectfully dissent from the Court’s opinion on the issue of submitting the affirmative defense of assumption of the risk to the jury, and I specially concur on the issue of whether the District Court should have recused itself. In all other respects, I join in the Court’s opinion.
With regard to the assumption of the risk issue, my disagreements with the Court’s analysis are several. First, it is my view that the Court’s extensive reliance on Krueger vis-a-vis the assumption of the risk defense is misplaced. At the time of the incident and lawsuit underlying Krueger, § 27-1-719(5)(a), MCA — statutorily defining the assumption of the risk defense — had not been enacted and this Court proceeded on common law interpretations of that defense. (The Court’s statement that § 27-1-719, MCA, was not in effect when Krueger was decided is incorrect; the statute was in effect but not applicable to the case.) Nor is there any suggestion in the legislative history that the statute was intended by the legislature merely to codify this Court’s Krueger definition of the assumption of the risk defense in products liability cases. Krueger has no relevance here in light of the necessity of applying § 27-1-719(5)(a), MCA, to this case.
Second, the Court’s interpretation of the assumption of the risk defense is circuitous at best and legally insupportable. The Court concludes that if the statutory misuse defense is unavailable as a matter of law, as I agree it is here, then the assumption of the risk defense also is unavailable as a matter of law. The rationale offered for this conclusion is that if “unreasonable misuse” in the context of the misuse definition does not exist as a matter of law, it is impossible as a matter of law for “unreasonable use” to exist in the context of the assumption of the risk definition. While this proposition has a simplistic logical appeal, it conveniently ignores the Court’s own emphasis on the different perspectives involved in the two defenses.
In discussing the misuse defense, the Court carefully and properly explains that the question of reasonable or unreasonable misuse involves the manufacturer’s perspective: whether the manufacturer *390 can or should reasonably foresee that its product is subject to misuse in a certain fashion. Then, in discussing the assumption of the risk defense, the Court goes to some length to explain that the applicable standard regarding that defense is the subjective perspective of the user: what this user knew of the defect and, on that basis, whether this user’s use of the product was unreasonable.
The Court then erases this careful distinction between perspectives by concluding that because the misuse defense is unavailable as a matter of law based on National Crane’s admitted ability to reasonably foresee the unloading misuse, so, too, is the assumption of the risk defense unavailable as a matter of law. The subjective perspective of the user of the product, on which the assumption of the risk defense is premised, simply disappears from the Court’s analysis at this point. The end result is to emasculate the legislature’s careful enunciation of two separate statutory defenses to products liability cases. I cannot agree.
Moreover, I disagree with the Court’s suggestion that establishing the assumption of the risk defense requires proof that the user of the product must know the accident is actually going to occur and still continue using the product. At best, this is a Krueger-based standard, while the case before us is governed by § 27-1-719, MCA. Establishing the defense pursuant to § 27-1-719, MCA, requires proof of two elements: (1) that the user of the product knew of the defect; and (2) that, based on that knowledge, the user unreasonably made use of the product. The Court adds a third element — that the user know the accident is actually going to occur — to a defense defined by the Montana legislature; again, I cannot agree.
As a final matter relating to the assumption of the risk defense, and based on my analysis of that defense, I would reverse a number of the District Court’s evidentiary rulings relating to this defense. National Crane was impermissibly prohibited from presenting its case on the question of Lutz’s knowledge, the foundational element of the defense.
Finally, with regard to the recusal issue, I agree with the Court that § 3-1-803, MCA, did not preclude the District Court from sitting in this case. I also agree that any “aura of possible bias or prejudice” which existed here did not rise to the level we determined to be inappropriate as a matter of law in Washington v. Mont. Mining Prop. (1990), 243 Mont. 509, 795 P.2d 460. I am concerned, however, that we not minimize in any way the crucial import of judges’ consideration of these matters.
*391 Our sensitivity as judges to appearances of impropriety, and to requests for recusal on that basis, is of critical importance in preserving the integrity of, and the people’s trust in, the judicial system and the administration of justice. The standards set forth in § 3-1-803, MCA, are minimal standards; they are the lines beyond which we cannot go in deciding whether it is appropriate to sit on a particular case. But those statutory standards do not begin to reach the mandate of the Canons of Judicial Ethics which requires us to avoid both impropriety and the appearance of impropriety.
It is our duty as judges to ensure that people’s confidence in the ability of courts to administer justice will not be diminished. We must be ever vigilant and sensitive with regard to whether our own relationship to parties or particular cases will reasonably appear improper to the people of Montana who entrust their system of justice to us. In considering whether recusal is appropriate in a given case, whether on motion of a party or on personal reflection, we must err on the side of caution. Only then can we meet the standard set out in Rex v. Sussex Justices (1924), 1 k.b. 256, 259, that “[njothing is to be done which creates even a suspicion that there has been an improper interference with the course of justice.”
CHIEF JUSTICE TURNAGE joins in the dissent of Justice Gray.